CHRISTINE HENDERSON V. STATE.

No. 24724. March 29, 1950.
Motion for Rehearing Denied (Without Written
Opinion) May 17, 1950.

*Shelburne H. Glover*, Texarkana, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was convicted of the killing without malice of Elbie Joe Griffin on August 27, 1949, and given a term of five years in the state prison. She appeals.

Both parties were Negroes, and the deceased seemed to be the owner and operator of the Dreamland Cafe in Texarkana, Texas. Appellant was employed by him, and in his absence she had charge of such business. She and the deceased evidently lived in a room adjoining such cafe, although the deceased had a wife in such city.

The witnesses to the tragedy were also Negroes, and the testimony is not only confusing but is contradictory to some extent. It is plain that the deceased was in the cafe just before he was shot; that he passed out the front door thereof toward a truck of his; that soon thereafter he was followed out by the appellant, and in a few moments the noise of a shot was heard; that appellant appeared in the door of the cafe and said, "I have shot Joe." He was then found lying by the side of the truck, the engine running and the lights burning. The back of the truck was against a guy wire where it had evidently struck while being backed away from the front of the cafe. The deceased was shot just under and on the side of the left eye, the bullet coming out behind the left ear. He was unconscious and died in a few hours of a brain hemorrhage. His money, watch and ring were found in appellant's possession, the watch band having blood upon it.

Appellant plead self-defense in that the deceased had often mistreated her and had threatened to kill her; that she followed him out of the house and he knocked her down; that she became unconscious and upon her recovery of consciousness, the deceased again attacked her; that she then shot him one time in order to save her life; that the deceased then got in his truck and backed it up against this guy wire; that he slumped over on the wheel, fell against the door, and rolled out on the ground; that she wiped the blood off his face and took his valuables for the purpose of giving them to the deceased's brother; that she then went back into the cafe and said that she "had shot Joe."

There are fifteen bills of exception found in the record. All of them are not briefed by appellant, but are not abandoned by her attorney. We will therefore write on such bills.

Bill No. 1 relates to a question asked Dr. G. W. Thompson as to whether it would not have been possible for the deceased to have turned his head a certain way just at the time the shot

was fired. The answer that such was possible seems to have little or no significance one way or another, the range of the bullet and its fatality being shown by the doctor.

To the same effect is a further question to this same doctor by the state's attorney which elicited the same answer as shown in Bill No. 1.

Bill No. 4 relates to a statement made to Bill Dale, a policeman, who testified that he got a radio call to go to the scene of the killing and arrived there in about three minutes; that he found the deceased lying by the truck and the appellant was standing in the street. When the officer got out of his car, appellant came running over there and said, "I done it. I killed him." She said, "I told him I would kill him and I did." I said, "Killed who? And she told me who it was." We think the trial court was correct in holding this statement to be res gestae of the transaction.

Bill of Exceptions No. 6 complains because of the court's failure to allow a certain witness to testify in answer to an improper predicate as to appellant's reputation. It appears from the qualification that the desired testimony was later given by this same witness, as well as many others, relative to appellant's reputation.

Bill No. 8 complains of certain questions asked a state's witness, Catherine Williams, wherein it was attempted to be shown that the witness had told appellant while she was confined in jail that the deceased had told the witness that "he (deceased) was going to do something that night that he would be sorry of" and the witness told appellant that "if you hadn't killed him, he would have killed you." If this was a threat, it was not communicated to appellant. This witness did finally testify that the deceased told someone else, not her, about his going to do something that night that he would not be proud of. She also testified that she told appellant that "if you hadn't killed him, he would have killed you." The trial court sustained an objection to this last question and answer already given, and he was correct in excluding this conclusion of the witness.

Bill No. 12 is governed by the same ruling as Bill No. 4.

Bill No. 14 shows upon its face that no answer was ever made to the question propounded to appellant while on the stand.

Bill No. 15 relates to the statements made to Policeman Dale and is governed by the ruling set forth herein on Bill No. 4, and relates to the res gestae statements made to Officers Dale and Scott.

The state's theory appears to have been that appellant was enamored of the deceased and suspected him of keeping the company of other Negro girls; that she had forbidden him to leave the cafe on the night in question; that upon his going out to his truck and starting the engine thereof, she followed him and shot him; that he fell out of the truck and soon died.

Appellant's defense was that they had had numerous quarrels; that deceased had often struck her and knocked her down; that he had scratched her and bit her, and that they were thus fighting outside the cafe; that he knocked her down and tore her clothes, and she became unconscious; that upon recovering consciousness, he was again attacking her, and she shot him once; that he then walked over to the truck, started the engine and then fell against the door and out onto the ground; that she shot him in self-defense.

The court's charge seemed to have been satisfactory to appellant, no objections thereto appearing in the record; and we think the jury had a right to base their verdict of guilt upon the evidence before them.

All bills not specifically written upon are expressly overruled.

The judgment will be affirmed.